**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-06254-JW |
| | C/A No. 11-06256-JW |
| JK Harris & Company, LLC, | C/A No. 11-06255-JW |
| JK Harris Small Business Services, LLC | Chapter 7 |
| JKH Holding Co., LC, | (Jointly Administered) |
| Debtor(s). | **ORDER** |

This matter is before the Court on the Motion to Impose Sanctions ("Sanctions Motion") and Supplement to the Motion to Impose Sanctions ("Supplement"), filed by the Chapter 7 Trustee, Michelle L. Vieira ("Trustee"). The Sanctions Motion was filed on March 12, 2012 as a part of the Trustee's Motion to: (1) Compel Attendance at the Continued First Meeting of Creditors Scheduled for April 10, 2012; (2) Impose Sanctions for Failure to Attend the Original Meeting of Creditors Scheduled for March 7, 2012; (3) Compel the Debtors to Amend Schedules and Statements and Otherwise Comply with the Conversion Orders and Bankruptcy Rule 1019(5)(A); and (4) Compel the Debtors to Provide the New Address and Contact Information for John K. Harris ("Motion to Compel"). JK Harris & Company, LLC; JK Harris Small Business Services, LLC; and JKH Holding Co., LC (collectively, "Debtors"), along with John K. Harris ("Harris") filed objections to the Motion to Compel. Following an expedited hearing on the Motion to Compel, the Court entered an order granting the Trustee's Motion to Compel, except as to the Sanctions Motion, which was continued to May 15, 2012. Prior to the continued hearing, the Trustee filed the Supplement on May 8, 2012 and Debtors filed an objection

to the Supplement on May 10, 2012. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

**FINDINGS OF FACT**

1. Debtors commenced the cases by filing separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 7, 2011. The petitions were signed by Harris, as Managing Member of each entity. These cases are being jointly administered pursuant to an order entered in each case on October 19, 2011.

2. Debtor JK Harris & Company, LLC filed its initial schedules on October 10, 2011. Debtor JKH Holding Co., LC filed its initial schedules on October 7, 2011. Debtor JK Harris Small Business Services, LLC filed its initial schedules on October 7, 2011. These schedules were all signed by Harris as Managing Member of each entity.

3. Upon and after filing their bankruptcy cases, Debtors operated their businesses and managed their assets as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.[2] Prior to conversion, Debtors JK Harris & Company, LLC and JK Harris Small Business Services, LLC were in the business of providing tax resolution services to consumer clients nationwide. As such, Debtors possessed a huge volume of personal and financial data regarding its customers.[3] Debtor JKH Holding Co., LC is the parent company of Debtors JK Harris & Company, LLC and JK Harris Small Business Services, LLC.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of facts, they are likewise so adopted.
[2] Further references to the Bankruptcy Code shall be by section number only.
[3] In order to ensure that the privacy interests of Debtors' customers were protected, a consumer privacy ombudsman was appointed pursuant to § 332 on January 18, 2012.

4. On December 29, 2011, Debtor JK Harris & Company, LLC filed a Motion to Convert the Case to a Case under Chapter 7. Debtors JKH Holding Co., LC and JK Harris Small Business Services, LLC filed Motions to Convert the Case to a Case under Chapter 7 or, alternatively, to Dismiss the Case. At that time, Harris, acting on behalf of Debtors, ceased Debtors' operations and closed their facilities.

5. Due to the alternative requests for relief set forth in the motions, the Court scheduled a hearing on January 10, 2012 to determine what relief, if any, was in the best interests of creditors. Following the hearing, Debtors' cases were converted to cases under Chapter 7 by orders entered in each case on January 10, 2012 (the "Conversion Orders"), and Michelle L. Vieira was appointed as Trustee for the cases. The Conversion Orders required Debtors to file the following within 14 days of the entry of the orders:

    a. Final statements of profit and loss and cash position through the date of conversion;

    b. Additional Schedules (Schedules D, E, and F) showing claims or interests against Debtors arising subsequent to the granting of chapter 11 relief;

    c. A mailing matrix;

    d. Revised schedules (Schedules A, B, C, I & J); and

    e. A description of any post-petition transactions that should be reflected in a Statement of Affairs filed as of the date of conversion.

The Conversion Orders further required Debtors to immediately turn over to the Chapter 7 trustee all estate property and records, to immediately cease all business operations and take all necessary and appropriate action to insure that estate assets are properly

preserved for the Trustee, and to immediately relinquish control of their operations and estate property to the Trustee and permit the Trustee and her agents unlimited reasonable access to estate property.

6. Debtors did not timely request an extension of time to perform and did not file the documents required to be filed under the Conversion Orders. At the time of the entry of the Conversion Orders, Harris had possession of an access card to Debtors' facilities, a company laptop computer, and a company cell phone. Harris did not turn over the access card, laptop computer, or cell phone to the Trustee, despite being requested to do so by the Trustee on multiple occasions, until January 21, 2012.

7. Harris admits that he deleted documents and other data from the laptop computer and cell phone prior to turning them over to the Trustee. He testified that on previous occasions, he had been instructed by a member Debtors' security staff to reset cell phones to factory settings and to delete sensitive company data contained on company laptops prior to turning them in for security purposes, and followed that practice this time "without thinking."

8. On February 3, 2012, the Court issued the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines, which scheduled the § 341 meeting of creditors ("§ 341 Meeting") for 10:00 a.m. on March 7, 2012.

9. On March 7, 2012, the § 341 Meeting was held, but no representative appeared on behalf of Debtors, other than Debtors' counsel, who participated telephonically. Harris testified that he was working in Boca Raton, Florida, on the date of the § 341 Meeting and offered, on the day before the Meeting, to appear by telephone. The Trustee testified that she rejected Harris's offer to appear by telephone because it

4

was made too late and because she needed live testimony regarding Debtors' assets and operations.

10. As a result of Debtors' failure to appear at the §341 Meeting and failure to amend their schedules and otherwise comply with the Conversion Orders, the Trustee asserts that she incurred additional expenses and delay. Therefore, she filed the Motion to Compel on March 12, 2012.

11. A hearing on the Motion to Compel was conducted on March 30, 2012. Harris was separately and personally represented by counsel at that hearing. During the hearing, the Court requested that Trustee's counsel prepare a proposed order to incorporate the following oral ruling:

    a. Harris was ordered to provide the Trustee with his address and location of his residence and to provide notice of any change in his residence or travel away from his residence for any significant period of time;

    b. Harris was ordered to appear at the continued § 341 Meeting to be held on April 10, 2012 and any continued § 341 Meeting;

    c. Harris was ordered to provide his company computer passwords to the Trustee;

    d. Harris was ordered to cooperate with the Trustee; and

    e. Debtors were ordered to file amended schedules and statements of financial affairs in compliance with the Conversion Orders prior to the § 341 Meeting on April 10, 2012, to allow the Trustee sufficient time to review them prior to such meeting.

12. On Sunday, April 1, 2012, Harris, Debtors' counsel, and a former employee of Debtors participated remotely in a virtual conference, via www.gotomeeting.com in order to review files on Debtors' computer system to obtain the information necessary to prepare and file amended schedules. The virtual conference was attended in person at Debtors' facility in Goose Creek, South Carolina, by Trustee's counsel and two other former employees of Debtors.

13. Debtors filed amended schedules on April 6, 2012 (the "Amended Schedules"). The Amended Schedules consist of several hundred pages (including the separately filed Schedule F), and include a cover document entitled, "General Notes and Statement of Limitations, Methodology and Disclaimer Regarding the Debtors' Schedules and Statements" (the "Disclaimer"). The Disclaimer provides, in pertinent part, that:

> [B]ecause the Schedules and Statements contain unaudited information that has not otherwise been verified and is subject to further review and potential adjustment, and which comes from unclosed books contained on a computer system controlled by the Chapter 7 Trustee, there can be no assurance that the Schedules and Statements are wholly accurate and complete, the Schedules and Statements shall remain subject to further review and verification by the Debtors as the Court may deem necessary and appropriate.

It further provides that "Mr. Harris has not (and could not have) personally verified the accuracy of the information, including information related to amounts owed to creditors" and that "the Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor do the Debtors intend the Schedules and Statements to fully reconcile with the Debtors' financial statements." Both the Disclaimer and Amended Schedules were signed by Harris as Managing Member of Debtors. The Amended

Schedules included an unsworn declaration, signed by Harris as Managing Member of Debtors, that provided:

> I, the Managing Member of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of [777] sheets, and that they are true and correct to the best of my knowledge, information, and belief.*
>
> *Managing Member has signed the Schedules with qualifications. For more details, see the General Notes at the beginning of the schedules and the explanations at the beginning of the various sections.

14. On April 9, 2012, the Court entered an Order[4] granting the Trustee's Motion to Compel, which, among other things, designated Harris as the representative of Debtors pursuant to Fed. R. Bankr. Pro. 9001(5) and compelled Debtors and Harris to:

   a. Immediately provide the Trustee with Harris's address and location of his residence;

   b. If Harris's residence changes at any time thereafter, notify the Court and the Trustee within five days of that change;

   c. In the event that Harris is required to be out of state for any lengthy period of time, notify the Trustee that he will be leaving the state and provide information regarding the length of time he will be out of state for any lengthy period of time, notify the Trustee that he will be leaving the state and provide information regarding the length of time he will be out of state and his whereabouts during this period of time;

---

[4] The Court's entry of the proposed order from the Trustee's counsel was delayed because Trustee's counsel and Debtors' counsel exchanged arguments regarding minor language in the order, including whether the amended schedules were to be filed "immediately" or "as soon as possible."

    d. Appear, in person, at the § 341 Meetings being held on April 10, 2012, and appear, in person, at any continued § 341 Meeting or at any scheduled 2004 Examination;

    e. Cooperate with the Trustee in all respects as required by 11 U.S.C. § 521(a)(3);

    f. Immediately file the amended schedules and statement of financial affairs as required by the Conversion Orders; and

    g. Immediately provide to the Trustee the passwords for Harris's laptop and other computers used in his capacity with Debtors and identify any other property of Debtors remaining in Harris's possession.

15. On April 13, 2012, the Trustee hand delivered a copy of the J Drive, which contains the entire server of Debtor JK Harris's computer system and all files saved on the central hard drive of that system, to Debtors' counsel.

16. On May 8, 2012, the Trustee filed the Supplement. In the Supplement, the Trustee argues, among other things, that the Disclaimer was improper and that the schedules should be further amended. The Trustee also argued that Harris failed to cooperate with the Trustee in the following ways:

    a. By refusing to timely turn over the laptop, cell phone and building access cards;

    b. By deleting information from the company cell phone and laptop, including at least 26,537 files since the Conversion Motions were filed;

8

    c. By refusing to provide information requested by the Trustee at the rescheduled § 341 meeting and elsewhere;

    d. By failing to attend the originally scheduled § 341 meeting;

    e. By assuring employees that they could continue to access the facility and work the customer files; and

    f. By refusing to file amended schedules.

17. Debtors and Harris, *pro se*, filed timely objections to the Supplement.

18. The Court conducted a hearing on the Trustee's Motion to Impose Sanctions and Supplemental Motion on May 15, 2012. Harris appeared *pro se* and provided testimony regarding his actions in these bankruptcy cases. At the hearing, the Court questioned the appropriateness of a disclaimer regarding schedules and statements in bankruptcy cases.

19. After several continuances, the § 341 Meetings for the three cases were finally held on June 8, 2012. Harris appeared in person to testify on behalf of Debtors.

20. The Trustee has commenced two adversary proceedings against Harris, Adv. Pro. No. 12-80152 and Adv. Pro. No. 12-80176, by filing complaints asserting claims for breach of fiduciary duty, unlawful distributions, and breach of contract.

## **CONCLUSIONS OF LAW**

Following the hearings on the Sanctions Motion and Supplement and the Court's entry of orders on April 9, 2012 and May 16, 2012, it appears that there are four outstanding issues to be decided by the Court with respect to these Motions: 1) whether the Disclaimer in Debtors' schedules may be allowed, 2) whether Debtors should be required to further amend their schedules, 3) whether John K. Harris should be

sanctioned for his conduct during these cases and 4) whether Debtors' counsel should be relieved from further responsibilities in these cases.

I. Disclaimer

Debtors filed the Amended Schedules on April 6, 2012, which include the Disclaimer. The Trustee objected to the Disclaimer, stating that it does not comply with the Bankruptcy Code, the Conversion Orders, or the Order to Compel for the following reasons: 1) the Disclaimer indicates that it is not filed under oath and that Debtors provide no assurance that the information contained in the Amended Schedules is accurate, 2) the Amended Schedules are not filed under penalty of perjury, 3) the Trustee has no way of knowing whether the information contained in the Amended Schedules is accurate, 4) Debtors failed to make certain disclosures, 5) all indications as to amounts due to and from various creditors and the available assets for the estate are estimated and are disclaimed as inaccurate, and 6) numerous other disclosures appear to be wholly and completely inaccurate. Debtors argued that the Disclaimer was necessary given the Trustee's control of the information and failure to provide further access as well as the state of the Debtors' book and records and the limited resources available to Debtors and Harris, individually. At the hearing on the Sanctions Motion and Supplement, the Trustee recommended that certain changes be made to the Disclaimer in order to satisfy her concerns. Thereafter, Debtors' counsel advised the Court that Debtors would agree to incorporate the Trustee's proposed changes. However, Debtors have not filed an amended disclaimer or amended schedules (other than a minor amendment to Schedule F) since the hearing. Since the issue is still controverted, the Court must address it.

Based upon the following, the Court believes that the inclusion of the Disclaimer, as filed, under the circumstances of this case is contrary to the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. This Court has previously stated:

> [A]ccuracy, honesty, and full disclosure are critical to the functioning of bankruptcy and inherent in the bargain for a debtor's discharge. Therefore, debtors are responsible for disclosing an accurate and complete schedule of assets with proper values and a truthful statement of affairs in order to convey a complete and accurate portrayal of their financial situation.

In re Simpson, C/A No. 03-07158, slip op. at 6 (Bankr. D.S.C. Nov. 13, 2003) (citing Kestell v. Kestell, 99 F.3d 146, 149 (4th Cir. 1996)). Furthermore, Fed. R. Bankr. P. 1008 provides that "all petitions, lists, schedules, statements, and amendments thereto shall be verified or contain an unsworn declaration." Section 1746(2) of Title 28 of the United States Code provides the language necessary for an unsworn declaration executed within the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." The official forms for the Schedules and Statement of Financial Affairs both provide for an unsworn declaration to be made by an individual signing on behalf of debtor when the debtor is a corporation or partnership. The official form Declaration Concerning Debtor's Schedules provides the following unsworn declaration:

> I, the _____ [the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership] of the _____ [corporation or partnership] named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Similarly, the official form Statement of Financial Affairs includes the following unsworn declaration for use in a case whether the debtor is a partnership or corporation:

11

> I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Although the Court has been unable to locate any authority, including bankruptcy case law, addressing the issue of whether a debtor can properly add a disclaimer to schedules and the statement of financial affairs or otherwise modify the language of the unsworn declarations contained in these official forms, it has identified case law regarding this issue as it pertains to modification of unsworn declarations in tax forms, which are similarly governed by 28 U.S.C. § 1746 and mirror the unsworn declarations in these bankruptcy forms. For example, in Sloan v. Commissioner of Internal Revenue, 102 T.C. 137, 141 (1994), aff'd, 53 F.3d 799 (7th Cir. 1995), the petitioner and his wife inserted the words "Denial & Disclaimer attached as part of this Form" just above their signatures on the unsworn declaration portion of the Form 1040, which provides:

> Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete.

The tax court held that where the taxpayer strikes or obliterates the unsworn declaration, the Form 1040, even if otherwise complete, accurate, and signed, does not constitute a return since it "does not contain information on which the substantial correctness of the self-assessment may be judged." Id. at 145. The tax court further noted that "[t]he Denial and Disclaimer makes unclear whether petitioner had an honest and reasonable intent to supply the information required by the tax code." Id.

Similarly, in Williams v. Commissioner of Internal Revenue, 114 T.C. 136 (2000), the petitioner attached a disclaimer statement to his Form 1040, which read in part:

12

> The above named taxpayer respectfully declines to volunteer concerning assessment and payment of any tax balance due on the return or any redetermination of said tax. Be it known that the above said taxpayer, therefore, denies tax liability and does not admit that the stated amount of tax on return is due and collectable.

The petitioner in Williams signed the unsworn declaration contained within the Form 1040. Despite the fact that the disclaimer statement was referenced elsewhere in the Form 1040, and not in the part of the form containing the unsworn declaration, the tax court nevertheless concluded that "his disclaimer, in effect, vitiated his verification of the truthfulness of the return." Id. at 142. Therefore, the tax court held that the Form 1040 did not constitute a valid return. The Court finds the foregoing tax cases to be persuasive and analogous to verified forms in bankruptcy cases.

Considering the length and detail of the Amended Schedules and Statements of Financial Affairs filed on April 6, 2012, the Court cannot readily conclude that Debtors, via Harris, are attempting to evade their duties to provide and update the required information. However, the import of the lengthy Disclaimer in these cases is that Harris is qualifying the representations and reducing the required assurance that the information is true and correct "to the best of [the signer's] knowledge, information, and belief."

Debtors argue that similar disclaimers have been allowed in this District in In re Bi-Lo, LLC, C/A No. 09-02140-hb (Docket Entry #542 field on 05/01/2009). However, it does not appear that the propriety of the disclaimer in that case was raised or addressed as a contested matter.[5] In light of the importance of these verifications, where the inclusion of a disclaimer is opposed by a party-in-interest, especially if that party-in-

---

[5] The Court is also aware that disclaimers have been used in mega cases in other districts, often by Chapter 11 trustees filing schedules and statements, and may have been used in other large cases in this District. However, it does not appear that the use of disclaimers has been controverted or formally addressed by court opinion.

13

interest is a fiduciary acting for the benefit of all creditors, there should be a showing of compelling circumstances to justify the use of a disclaimer in connection with the filing of schedules and statements. A disclaimer is particularly problematic in a converted case when the trustee questions whether the debtor is cooperating or preserving estate assets. In addition, a court should not have to parse a lengthy disclaimer to determine whether it has the effect of reducing or qualifying the signer's assurances regarding the veracity of the schedules or statements. In these cases, the inclusion of the Disclaimer raises serious questions regarding the reliability of the information contained in the Amended Schedules and Statement of Financial Affairs, because it alters the meaning of the unsworn declaration to such an extent that it can no longer be certain that Harris, as Managing Member of Debtors, verified these documents under penalties of perjury. The Court also believes, in general, that the inclusion of a disclaimer without compelling justification is contrary to the very purpose of requiring detailed and verified schedules and statements of financial affairs and the policy of complete and accurate disclosure underlying the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. To some degree, the debtor or the signer of the schedules and statements has the protections sought through the use of a disclaimer by the very nature of the verification language. Pursuant to its terms, a verification of the schedules through an unsworn declaration is not a guarantee of perfection. Rather, it is a declaration that the schedules are true and correct "*to the best of [the signer's] knowledge, information, and belief.*" See Official Form B6 Declaration Concerning Debtor's Schedules (12/07) (emphasis added). Therefore, for all of the foregoing reasons, the Court concludes that the Disclaimer should not be allowed

as part of Debtors' schedules and statements of financial affairs and that they should be amended accordingly.

  II. Further Amendment of Schedules and Statements

The Trustee additionally asserts that Debtors should be required to amend their schedules and statements because these documents themselves contain limitations and qualifications that indicate their inaccuracy. After Debtors filed Amended Schedules and Statements of Financial Affairs on April 6, 2012 using the information obtained from the J Drive of Debtors' computer system, which appears to contain Debtors' financial records, during the virtual meeting on April 1, 2012, the Trustee provided a full copy of the J Drive to Harris on April 13, 2012 in order to respond to Debtors' disclaimer about the lack of access to the computers in the Trustee's control.[6] The Trustee argues that because she has provided Harris with a copy of the J Drive of Debtors' computer system, he now has complete access to the information necessary to file accurate schedules and statements and reasonably remove the limitations and qualifications contained within the schedules and statements currently on file.

Debtors argue that they made a substantial effort and did the best they could in a short amount of time to prepare and file the amended schedules and statements filed on April 6, 2012, and that they should not be required to further amend these documents. Debtors further assert that the J Drive contains "9 miles" worth of information. Harris testified that it is impossible for him to close the accounting books and prepare the financial reports necessary to complete the schedules because he relied on a staff of

---

[6] The Court notes that the entry of the order requiring Debtors to amend their schedules was delayed until April 9, 2012, after the amended schedules had already been filed, as a result of counsel's inability to reach an agreement regarding minor language in the proposed order.

numerous individuals, who are no longer employed by Debtors, to prepare the books and records, and he lacks the knowledge and expertise to do so himself.

In light of these opposing arguments, the Court notes that "the submission of accurate schedules of assets and debts is a cornerstone of the bankruptcy process that requires a full, candid, and complete disclosure of debtors of their financial affairs." In re Yefimova, No. 08-20049, 2012 WL 2087081 (Bankr. D.Md. Jun. 8, 2012) (citing In re Searles, 317 B.R. 368, 378 (B.A.P. 9th Cir. 2004)).  In these cases, Debtors have repeatedly qualified their efforts by pointing out that the information source for their schedules and statements was controlled by the Trustee.  After the unusual "gotomeeting" conference was arranged to provide access, Debtors filed a large set of schedules and statements, but still disclaimed or qualified the information.  Thereafter, Debtors' representative failed to appear and be examined on those schedules until expressly ordered by the Court.  Since Debtors are required to amend the schedules and statements to remove the Disclaimer and they now have access to all the information available to allow them to do so, they should amend the schedules and statements once more to the extent necessary to fully comply with the Conversion Orders and put an end to this issue. While the Court recognizes that Harris's ability to prepare the financial reports necessary to amend the schedules may be limited by his lack of skills or resources and the fact that the former employees who formerly assisted him are no longer employed and willing to assist without being compensated for their efforts, the Court believes that Harris's best efforts should be made in light of the availability of all of the information.  Again, the Court notes that perfection is not the standard.  Rather, the information provided must be to the best of Harris's knowledge, information, and belief.  See In re Reese, 402 B.R. 43

16

(Bankr. M.D.Fla. 2008) (finding that the debtor's schedules, despite their inaccuracies, were her "best effort"). If Debtors have made a thorough and proper effort under the circumstances of the cases, then their responsibility will be met.

Therefore, in connection with filing amended schedules and amended statements of financial affairs to remove the Disclaimer as required above, Debtors shall amend their schedules and statements of financial affairs within 14 days of the entry of this Order to meet the requirements of the Conversion Orders and include previously omitted information and correct inaccuracies to the extent reasonably necessary to provide a full, candid, and complete disclosure of Debtors' financial affairs. As the designated representative of Debtors under Fed. R. Bankr. P. 9001(5), Harris is responsible for preparing and filing such amendments *to the best of his ability*. After the amended filings, the Trustee should administer the case with the information she has identified or developed since her appointment as trustee in these cases.

III. Sanctions Against Harris

The Court will address this issue by separate order.

IV. Debtors' Counsel Motion to be Relieved

At the May 15, 2012 hearing on the Motion and Supplement, Debtors' counsel made an oral motion to be relieved from further duties as counsel since the cases have been converted. While it is reasonable to expect Debtors' counsel to assist Debtors in complying with the Court's Conversion Orders, the Court recognizes the limitation on the means of compensation for counsel's services after conversion of a case to a case under Chapter 7 set forth in the U.S. Supreme Court's decision, Lamie v. U.S. Trustee. 540 U.S. 526, 124 S.Ct. 1023 (2004) (holding that the § 330(a) does not allow a chapter 7 debtor's

17

attorney to be compensated from the estate, unless the attorney is employed by the trustee with approval of the bankruptcy court). Therefore, at some reasonable point, the responsibilities of Debtors' counsel in a converted chapter 7 case should be viewed as complete. **Unless an objection is filed by the Trustee or Debtors within 10 days of the entry of this Order, the Court will grant the motion and relieve Debtors' counsel from further responsibilities in these cases. In the event a timely objection is filed, the Court will conduct a hearing <u>at 9:00 a.m. on August 10, 2012 at the King and Queen Building, 145 King Street Room 225, Charleston, South Carolina 29401</u> to further consider the motion to be relieved.**

## CONCLUSION

Based on the foregoing, it is hereby ordered that:

1) the Disclaimer filed on April 6, 2012 is not allowed;

2) Debtors shall file Amended Schedules and Statement of Financial Affairs to remove the Disclaimer and provide any changes that are reasonably necessary to provide a full, candid, and complete disclosure of Debtors' financial affairs pursuant to the Conversion Orders within 14 days of the entry of this Order;

3) As the designated representative of Debtors under Fed. R. Bankr. P. 9001(5), Harris is responsible for preparing and filing the amendments required by this Order;

4) The Court will address the Sanctions Motion by separate order, and

5) Debtors' counsel's oral motion to be relieved from further duties as counsel will be granted unless a written objection is filed within 10 days of this Order. In the event a timely objection is filed, the Court will conduct a hearing at

18

9:00 a.m. on August 10, 2012 at the King and Queen Building, 145 King Street Room 225, Charleston, South Carolina 29401 to further consider the motion.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**07/17/2012**



Entered: 07/17/2012

*John E Waites*

Chief US Bankruptcy Judge
District of South Carolina